TUCKER, Judge:
This is a suit to enjoin permanently a nuisance allegedly created by the operation of a nightclub in a residential subdivision. Petitioners in this suit, Joseph Ruby Scott, Lucius Paul Pinel, Carroll Paul Scott, and Tracy P. LeBlanc, are all residents of Ridgeway Subdivision in the City of Hou-ma, Louisiana, and all live near Lot Three (3) of Block One (1) of Ridgeway Subdivision, which is owned by defendant Roosevelt G. LeCompte, and on which defend *346 ants Gordon Engeron and Thomas Enge-ron, operate a bar-nightclub cocktail lounge known as the “Two Wheel Night Club”, in premises leased from defendant Roosevelt G. LeCompte. Plaintiffs charge defendants Engeron with creating a nuisance “.in utter disregard of the rights of petitioners in that said defendants have allowed loud noises, consisting of talking, music, cursing and abusive language, fights, as well as excessive traffic and other nuisances and annoying circumstances to continue into the night until approximately 2:00 o’clock A.M. each night, or later,” all in violation of certain restrictions applying to Ridgeway Subdivision, as follows:
(1) All lots of Ridgeway Subdivision other than Lots 1, 2 and 3 of Block 1, and Lots 1, 2, and 3 of Block 4, shall be used for residential purposes only; Lots 1, 2 and 3 of Block 1, and Lots 1, 2 and 3 of Block 4 may be used for commercial purposes.
(2) There shall be no noxious or offensive trade or other activities carried on or engaged in upon lots 1, 2 and 3 of Block 1, and lots 1, 2 and 3 of Block 4 which may be used for business purposes, nor shall anything be done thereon which may be or become an annoyance or nuisance to the subdivision.
(18) If the parties hereto, or any of them or their heirs or assigns shall violate or attempt to violate any of the covenants herein, it shall be lawful for any other person or persons owning any real property situated in the said development or subdivision to prosecute any proceedings at law against the person or persons violating or attempting to violate any such covenant and either to prevent him or them from so doing or to recover damages for such violation.
The lower court judge found that the acts of which plaintiffs complained did constitute a nuisance within the meaning of the Subdivision Restrictions. Although stating that it found the case of Johnson v. Nora, 87 So.2d 757 (La.App. 2nd Cir. 1956) analogous and quoting at length from it, the lower court rendered a decision differing in a material respect from that of the Johnson v. Nora case. Whereas the Appellate Court in Johnson v. Nora enjoined the defendant from operating his business “in such a manner as to constitute a nuisance resulting in the undue and avoidable disturbance of the peace of the neighborhood and the normal enjoyment by the plaintiffs of their respective properties,” the judge in the instant case permanently enjoined defendants from the operation of the “Two Wheel Night Club” on the basis that anything less would be ineffective. The judge cited particularly the increased vehicular traffic and the fact that defendants were unable to control their patrons when they left the club. He said, also, “.we feel that under the circumstances here presented, a decree such as that rendered in Johnson, would be conducive to and even invite further litigation to determine whether any given alleged disturbance constituted a nuisance.”
From this judgment defendants-appellants have appealed to this court, alleging the following assignments of error:
I. THE TRIAL JUDGE ERRED IN FINDING THE OPERATION OF THE TWO WHEEL NIGHT CLUB A NUISANCE.
II. THE TRIAL JUDGE ERRED IN GRANTING A PERMANENT INJUNCTION AND IN NOT FOLLOWING THE RULING OF JOHNSON v. NORA.
III. THE TRIAL JUDGE ERRED AND ABUSED HIS DISCRETION BY NOT GIVING PROPER WEIGHT TO THE TESTIMONY OF THE WITNESSES WHO HAD NO INTEREST IN THE LITIGATION.
The evidence indicates that defendant Roosevelt LeCompte bought Lot Three (3) *347 of Block One (1), Ridgeway Subdivision, in' 1962, subject to the restrictions which reserved the lot in question for commercial purposes. LeCompte bought the lot for a commercial purpose and proceeded to erect a building on this lot suitable for commercial ventures, prior to the time that any of the plaintiffs bought their lots. Since 1962 this building has been used variously ,as a dry goods store, a teen-age dance hall and restaurant known as the “Boondoggle,” the “Imperial Restaurant and Lounge,” the “Big Mamou,” and since 1969 as the “Two Wheel Night Club”. The residents of the Ridgeway Subdivision did not complain seriously about the usage of defendant’s building until the period of the operation of the “Two Wheel Night Club,” by defendants Gordon and Thomas Engeron, whom they now charge with creating a nuisance in violation of Restriction Two of the restrictions pertaining to the Ridgeway Subdivision.
The operation of a night club is not a nuisance per se in Louisiana. A very careful analyzation of plaintiffs’ six witnesses’ testimony reveals that the disturbances of which they complain are more in the nature of isolated acts of inconvenience and annoyance than of such sustained and violent character as would substantially interfere with the neighbors’ use and enjoyment of their own property, causing diminution in value thereby and constituting a nuisance within the understanding of Louisiana jurisprudence. See Robertson v. Shipp, 50 So.2d 699 (La.App. 2d Cir. 1951) and Hines, “Private Nuisance in Louisiana Law”, 15 La.L.R. 441, (1955) (both of the preceding deal with nuisance in general under Louisiana law, and not specifically with nuisance within the meaning of subdivision restrictions, but are instructive nevertheless).
When the actual facts attested by plaintiffs’ witnesses are rescued from the cloud of vagueness, conjecture, and hyperbole which enshroud them, it is discovered that only one witness saw as many as two fights, and the other six witnesses who testified to having seen fights may have been testifying to the same fight or fights. None of these fights seems to have been particularly serious, although they may well have caused concern to the neighborhood. Only two witnesses admitted to having thought the fights sufficiently serious to justify their calling the police. Apparently no arrests or other police charges were made as a result of these fights. No ambulances were called. No injuries were reported. In fact all testimony in regard to the fights was very vague and non-specific. It was not conclusively proven that the fights were all between patrons of the Two Wheel Night Club or in any way engendered by their attendance there. There was vague testimony as to cursing, abusive language, loud talk, and hollering on the occasions of the seven or fewer fights but not even one direct quote, or one specifically described and identified incident. One witness who complained bitterly of abusive language, on cross-examination admitted that this happened on only one occasion.
Two witnesses described an occasion in which a group of men standing in the street in front of the “Two Wheel” became angered when splashed by one of the witnesses driving by in her car and used abusive language, but again this incident was described in such generalities as to provide little factual information.
The testimony as to the annoyance of loud music emanating from the “Two Wheel” seems a little more convincing. When cleared of the debris of vagueness and generality surrounding this testimony, however, the facts emerging indicate that the defendant operators of the “Two Wheel” engaged bands only on Friday and Saturday nights, every other week, for the first seven months the club was in operation, and had not had them for some months before suit was filed. The club was closed on Sundays until a month before the trial of this case. On the nights when no bands were playing at the “Two *348 Wheel,” juke box music was available, but the defendants testified that it was played at a normal level, and that the juke box was kept locked so that its volume could not be adjusted by anyone except the proprietor. The Engerons testified further that they kept the door to the club closed at all times except when cleaning up. Although the testimony varied as to the lateness of the hour of disturbance, no witness testified to disturbing music after 2:00 A. M.
Increased traffic was another item of nuisance alleged by the plaintiffs, who complained of people turning around in their driveways and littering them with dust and oil from the road, etc. Some witnesses alleged drunken driving, but upon cross-examination none could testify absolutely to the condition of intoxication of any of the drivers upon their street. Furthermore, there was very little testimony to the fact that the drivers annoying them had been or intended to be the patrons of the “Two Wheel.” The Engerons testified that they had parking space for 70 automobiles, and had 38-40 automobiles at a time on a very busy night. There was vague reference to loud mufflers, fast driving, etc., but nothing specific, and nothing to indicate that Swan Street, the street upon which the “Two Wheel” was located, differed in any way in this respect from any street in any modern-day subdivision in which teen-agers live.
Although several of plaintiffs’ witnesses testified they were afraid for their children to play on Swan Street because of the “Two Wheel” and had to limit them to their own backyards, there is not one single piece of evidence to indicate that any child in Ridgeway Subdivision was molested or frightened or annoyed in any way by anyone, much less by any patron of the Two Wheel Night Club.
James B. Frank, Chief of Police in Hou-ma for eighteen years, testified that he could not say exactly how many calls the police department had had in regard to the “Two Wheel Night Club,” for the simple reason that he did not keep files in the name of the place of the disturbance, but in the name of the complainant; however, the complaints of disturbance in the immediate neighborhood of the “Two Wheel” in 1969 (the year of its operation prior to suit) had been “very rare. Very, very few.” He testified additionally that he had personally made “spot checks” of the place in plain clothes and had found it operating as a normal night club. Although he had had trouble with other bar owners, he did not consider the “Two Wheel” a trouble spot.
One witness, Charles C. Badeaux, who had originally signed a petition to the City Council asking for the closing of the bar and who had contributed One Hundred ($100.00) Dollars to a legal fund for the resolution of this matter, readily admitted that he had changed his mind and no longer had any complaints about the existence and operation of the “Two Wheel.” He said that it was not loud and noisy and did not prevent him from using and enjoying his own property.
Another neighbor, whose back yard adjoins the subject property in the rear, testified that the operation of the “Two Wheel” did not disturb him in the enjoyment of his property in any way. All witnesses admitted that “things had quietened down,” since the lawsuit to enjoin the operation of the place had been filed.
Although some witnesses claimed that their houses were not worth as much as they had paid for them due to the operation of the “Two Wheel,” the only actual loss proven was that of Three Hundred Dollars ($300.00), by one witness. Charles D. Chauvin, on the other hand, who was qualified as a real estate expert, testified that property values were increasing in the Ridgeway Subdivision, despite the operation of the “Two Wheel,” just as they were all over Houma.
Subdivision restrictions are subject to strict interpretation in Louisiana, *349 and every doubt should be resolved in favor of the unencumbered use of the property. See LSA-C.C. Art. 753, and the well-worded opinion of Chief Justice Fournet in Salerno v. De Lucca, 211 La. 659, 30 So.2d 678 (1947), which has been followed in many cases since then. The restriction sought to be enforced in the instant suit involves the question of nuisance. In determining whether or not a nuisance exists within the meaning of the restriction set forth above, it is necessary to balance the complainants’ right to use and enjoy their property against the defendant owners’ and lessees’ right to operate a legitimate business on a lot reserved for commercial purposes. In so doing, and after painfully extricating the kernal of truth and fact from the welter of words in the record, this court finds that the aggregate of disturbances alleged in this case do not constitute a nuisance within the meaning of the Louisiana law or within the meaning of the Ridgeway Subdivision restriction imposed upon defendants.
Although the parties to this suit and the trial judge based their respective arguments and opinions on the question of “nuisance” within the meaning of the subdivision restrictions, this court takes judicial cognizance of the fact that paragraph (2) of the Ridgeway Subdivision Restrictions prohibits “annoyance” as well as “nuisance.” Undoubtedly the purpose of the developers of the Ridgeway Subdivision, in filing their restrictions, was to create a nice, quiet residential area in which the few commercial establishments allowed were to serve the subdivision residents, and not to deprive them of the use and enjoyment of their restrictive properties.
Whereas this court does not find that the evidence in this case substantiates a holding of “nuisance,” it does find that the operation of the “Two Wheel Night Club” has resulted in inconvenience and annoyance to some of the residents of the Ridgeway Subdivision. Civil Code Articles 666-669, when read together, set forth the principle that “. . . every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor” (See also Robichaux v. Huppenbauer, 258 La. 139, 245 So.2d 385 (1971); yet this court deems that the evidence in this case transcends the limits of “some inconvenience” countenanced by C.C. 666-669 and constitutes “annoyance” as prohibited by Paragraph (2) of the Ridgeway Subdivision Restrictions. Even though the acts complained of do constitute “annoyance” within a prohibited degree, this court does not consider them sufficiently annoying to justify enjoining defendants permanently from the operation of their business and depriving them of a livelihood.
This court is reassured from the well-attested facts that the grade and quantity of the annoyances have subsided substantially in the months following the filing of this suit and believes that the “Two Wheel Night Club” can be operated as a business free from the complaints lodged against it in this case. As a result of this belief, and having found that the evidence herein does not establish that the operation of the “Two Wheel Night Club” by the defendants constitutes an actionable niusance under the Louisiana law and the Ridgeway Subdivision Restrictions, although it does constitute an annoyance within the meaning of those restrictions, this Court will reverse that portion of the trial court’s judgment which enjoins, prohibits, and restrains the defendants from operating the business known as the “Two Wheel Night Club,” and will amend and recast the judgment of the trial court to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of the plaintiffs, Joseph Ruby Scott, Carroll Paul Scott, Lucius Paul Pinel, and Tracy P. Le-Blanc, and against the defendants, Anthony (Tony) Engeron, Gordon Engeron, and Roosevelt G. LeCompte, forever enjoining, *350 restraining, and prohibiting the said defendants, their agents, employees, and all others acting on their behalf from operating the business known as the-“Two Wheel Night Club” located in Block One (1) of the Ridgeway Subdivision in the City of Houma, Louisiana, in such a manner as to constitute an annoyance and/or a nuisance, thereby preventing the enjoyment by the plaintiffs of their respective properties. Specifically this court enjoins the defendants from the playing on their premises of loud music or creating any other loud noises. They are further enjoined from entertaining unruly patrons. They are ordered to provide adequate parking spaces off of Swan Street so that their patrons will not have to park on the street or turn into neighbors’ driveways or otherwise cause traffic problems. They are further ordered to establish litter cans on their outdoor premises for beer cans and other refuse to be deposited by their patrons. In short this court orders defendants to maintain their present business as a quiet neighborhood establishment.
For the reasons assigned, this matter is remanded to the trial court where an injunction, mandatory and prohibitive, shall issue against defendant without delay in accordance with the mandates and restrictions enumerated above. The judgment, order and decree so issued shall prescribe compliance therewith by defendant within two weeks, failing in which he shall be subject to punishment for contempt of court, all in accordance with law. The right of plaintiffs to renew their complaints if compliance by defendant proves unavailing to abate the annoyance and/or nuisance is reserved. Tucker v. Vicksburg S. & P. Ry. Co., 125 La. 689, 51 So. 689 (1910); Hill v. Battalion Washington Artillery, 143 La. 533, 78 So. 844 (1918).
All of the costs will be paid by defendants-appellants.
Judgment reversed in part; affirmed in part as amended and recast.