BYRNES, Judge.
In this action for damages for personal injuries sustained by the minor, Ernest Brown, his tutor appeals that portion of the judgment which found the defendant, Orleans Parish School Board free from liability. We affirm the judgment of the trial court.
The sole issue presented for our consideration is whether, under the facts presented, the trial court erred in dismissing plaintiffs suit against the Orleans Parish School Board.
The trial court’s findings of fact are fully supported by the record and we adopt them as our own:
On the evening of Tuesday, 28 August 1984, Ernest Lanis Brown (“Ernest”), age 11, sustained substantial and disfiguring burns to a major portion of his body when duplicating fluid, which two other children over the age of 12 were playing with, exploded from a one gallon metal can setting him, but not the other two children on fire....
Early on the afternoon of 28 August 1984, Leonard Kisack (“Leonard”) and Gerald Preston (“Gerald”) were playing around a trash dumpster located on the school grounds of the Henderson II. Dunn Elementary School (“Dunn School”) which is owned and operated by the OPSB. The Dunn School is located at 3601 Desire Parkway, New Orleans; the front of the school faces.Desire and the three remaining sides about the rears of housing units in the Desire Housing Project. The school is fenced, but gates to the school yard are regularly left open, including the period when school is not in session, and the fences have many cuts in them through which children and other individuals can and do gain access to the school yard. People regularly use the school yard as a walk-through to get to or from Desire Parkway and the project. Because of its location, the school experiences a significant amount of vandalism. During the summer months, a custodian is on duty at the school. The accident occurred prior to the beginning of the new school year of 1984-1985.
The Dunn School uses a significant amount of duplicating fluid. The fluid also is commonly called “Ditto Fluid”. “Ditto” is apparently a brand name. Du *86 plicating fluid is flammable; the can labels and testimony so indicate. Duplicating fluid is delivered to the individual OPSB schools from a central OPSB warehouse in one gallon metal cans. “Ditto” copies are made through the use of the fluid. Because of vandalism and the flammable nature of the fluid, the officials at the Dunn School keep the fluid under lock and key.
Sometime after 1 June 1984, the principal of the Dunn School, Wilbert Dunn, completed a requisition request directed to the OPSB for 10 new one gallon cans of duplicating fluid. The 10 cans were delivered to the Dunn School on the 28 July 1984 and were received by Edward McFloyd, the chief custodian of the school. On 31 July 1984 an additional requisition was made by Mr. Dunn for 42 additional one gallon cans of the fluid; the Court notes that the duplicating fluid is referred to in the requisition as “Ditto Fluid”. The delivery of those 42 cans to the Dunn School was not made until 11 September 1984. OPSB records reflect that during 1984, the Dunn School received a total of 97 gallon cans of duplicating fluid.
Although Mr. McFloyd maintains that he did not throw into the school yard trash dumpster any used, empty, full or partially used cans of duplicating or Ditto fluid on or about 28 August 1984, this Court finds that an employee of the Dunn School and ergo the OPSB did depose of (a) a large number of cans that used to contain duplicating or Ditto fluid and or (b) a large number of cans that contained some amounts of the duplicating or Ditto fluid. These cans were placed inside the trash dumpster at the Dunn School.
Leonard and Gerald took four partially used cans of duplicating fluid with them back to the area of the project where they lived and began playing with it by burning it. Other kids, but not Ernest, participated in the playing; one of those children sustained a burn to the top of his head. Yet prior to Ernest’s injury, and in spite of the other child being burned, Leonard and Gerald continued to play with the fluid. During that day, one of them returned to the dumpster and obtained at least one additional partially filled can of the fluid; such was prior to anyone getting burned.
At approximately 7:45 p.m., Ernest observed from the second floor window of his housing unit Leonard and Gerald burning the fluid. He proceeded down the steps of his dwelling to join the other kids.
Gerald was pouring the duplicating fluid from the one gallon can into a torn plastic milk carton on the ground. The fluid came from a can that Leonard had brought back from the school dumpster. The fluid in the milk carton was burning. Gerald, while standing over the milk carton continued to pour the fluid into the flames. As he did so, the flames climbed the stream of fluid and entered the can. The gases produced by the burning fluid in the can forced the remaining fluid in the can to explode from the top of the can in a flaming ball of liquid striking Ernest as he came around the corner of the building to the kids who were playing with the fluid. At the moment of the explosion his head was turned slightly away from the kids; as he looked back the fluid struck him. The flaming liquid made Ernest into what could best be described as a human torch burning him and his clothing.
On appeal plaintiff contends that the dismissal of the defendant Orleans Parish School Board was error. She reasons that the conduct of this defendant was a cause in fact of the accident. That is, the School Board had a duty to safely dispose of the ditto fluid which it failed to do. The purpose of this duty was to protect people from the harm which could result from this flammable product. Thus according to the plaintiff, the risk involved was within the scope of the duty and this defendant should be cast in judgment for its negligence. We disagree.
In Gresham v. Davenport, 537 So.2d 1144 at 1146 (La.1989), the Louisiana Supreme Court discussed the duty risk analysis of liability:
*87 The standard of conduct required of persons in Louisiana in their relationship with one another as a basis of delictual liability is set forth in La.Civ.Code arts. 2315 and 2316.

Article 2315 provides in pertinent part:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

Article 2316 provides:

Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Accordingly, under these articles the elements of a cause of action are fault, causation and damage. The conduct of which the plaintiff complains must be a cause-in-fact of the harm. After determ-ing causation, the court must also determine what was the duty imposed on defendant, and whether the risk which caused the accident was within the scope of the duty. A breach of duty on the part of the defendant which was imposed to protect against the risk involved makes the offender negligent under the above articles. Vicknair v. Hibernia Building Corp., 479 So.2d 904 (La.1985).
In this contest, negligent conduct is a cause-in-fact of harm to another if it is a substantial factor in bringing about that harm. Gresham v. Davenport, supra citing Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (La.1962). In such cases a “duty” is defined as an obligation to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. Gresham v. Davenport, supra.
In this case the trial court found that the Orleans Parish School Board had a duty to properly dispose of, or “denature” the duplicating fluid. It further found that plaintiff had failed to prove that a breach of this duty occurred, in that they failed to prove that the method of disposal was unreasonable under the facts presented. In addition, the court found that the risk which caused the harm was not within the scope of duty breached by defendant. As such it refused to impose liability upon this defendant.
We are in accord with the lower court in their analysis. The record reflects that the Dunn School because of its unique location was subject to vandalism. It was also in an area where a large number of children would play, especially during the time of the summer break. The school personnel were aware that duplicating fluid could be flammable. Precautions were taken to guard against the produce being misused in that it was inventoried, collected and stored in a double locked storeroom during breaks in the regular school year. Considering the properties of the product involved, the location of the school involved and the conditions present especially during summer break, it is clear that the Orleans Parish School Board had a duty to properly dispose of the unused cans of duplicating fluid.
In this case the subject cans were placed inside a metal dumpster located on the school grounds, on the day designated for the collection of the trash from the dumpster. There is no evidence to suggest that this practice is unreasonable under the circumstance. The record is simply devoid of evidence, lay or expert, which would indicate further precautions were warranted or that the defendant should have foreseen that someone would remove these items from the dumpster and allow them to fall into the hands of minors. As such, the trial court correctly found that the plaintiff failed to prove that this defendant breached a duty owed to her.
Additionally we agree with the trial court’s conclusion that the risk which caused the accident was not within the scope of the duty owed by the Orleans Parish School Board. The real culprit was the actions of Leonard Kisack and Gerald Preston in misusing the duplicating fluid by playing with it and setting it afire. As found by the Louisiana Supreme Court in Dunne v. Orleans Parish School Board, “[tjhere simply is no ease of association between any duty imposed on the Board and the injury which occurred.” 463 So.2d 1267 at 1270 (La.1985).
*88 For the foregoing reasons assigned the judgment of the trial court is affirmed at plaintiffs costs.
AFFIRMED