566 So.2d 955 (1990)
Mary BROWN, Individually and On Behalf of her Minor Child Ernest Lanis Brown
v.
Katherine TESACK, Individually and as the Administratrix of the Estate of her Minor Children Leonard Tesack and Keith Tesack; Beverly Preston, Individually and as the Administratrix of the Estate of her Minor Child Gerald Preston, and the Orleans Parish School Board.
No. 90-C-0071.
Supreme Court of Louisiana.
September 6, 1990.
Rehearing Denied October 18, 1990.
Edmond J. Harris, J. Nelson Mayer, III, for Mary Brown et al. plaintiff-applicant.
Clare Jupiter, Jefferson, Bryan, Jupiter, Lewis & Blanson, for Orleans Parish Public Schools defendant-respondent.
SHORTESS, Justice, Pro Tem.
Suit was brought by Mary Brown to recover damages resulting from an accident in which her minor son, Ernest Lanis Brown (plaintiff), was severely burned.[1]
The matter proceeded to trial against Katherine Kisack,[2] individually, and as administratrix of the estate of her minor children Leonard Kisack and Keith Kisack, and Beverly Preston, individually and as the administratrix of the estate of her minor child Gerald Preston, and the Orleans Parish School Board (Board). Preston never answered, so plaintiff proceeded by default against her. Kisack and the Board were *956 both represented throughout the trial stage. The trial court, upon completion of the trial and after receiving briefs from the parties, rendered written reasons for judgment. It awarded damages of $451,219.13 to plaintiff against Beverly Preston and Katherine Kisack, jointly and in solido. It dismissed plaintiff's suit against the Board after finding that the Board breached no duty owed to plaintiff. It apportioned fault between the remaining defendants at 90% to Preston and 10% to Kisack.
Plaintiff appealed to the Fourth Circuit Court of Appeal, which affirmed over one dissent. Brown v. Tesack, 556 So.2d 84 (La.App. 4th Cir.1990). The plaintiff's application for a writ of review, which we granted, complained that the lower courts erred as a matter law in dismissing plaintiff's case against the Board. Brown v. Tesack, 556 So.2d 1288 (1990).

FACTS
On the afternoon of August 28, 1984, during summer recess, Leonard Kisack, age 13, and Gerald Preston (over 12) obtained four partially-used cans of flammable duplicating fluid from a red metal garbage dumpster located in the rear of the Henderson H. Dunn Elementary School (Dunn School). Dunn School is an elementary school within the Orleans Parish School Board system and is located immediately adjacent to the Desire Housing Project, and the school yard is used as a throughway from Desire Parkway to the Desire Housing Project. Dunn School has a significant history of break-ins and vandalism.
Ten cans of duplicating fluid ordered from the Board were delivered to Dunn School on July 28, 1984. An additional forty-two cans were ordered July 31, 1984, and delivered on September 11, 1984. During the entire 1984 school year, Dunn School received ninety-seven cans from the Board's Warehouse Department.
Some time prior to August 28, 1984, an employee of the Dunn School disposed of a number of cans containing varying amounts of duplicating fluid in the dumpster. Leonard and Gerald took four cans from the dumpster to a courtyard in the Desire Housing Project where they lived and began to play with the fluid by creating small fires. Plaintiff lived in the project but was not a party to these activities. Gerald returned to the dumpster for an additional can of fluid later that evening and began pouring fluid onto an already burning plastic milk carton. Plaintiff came around a corner and onto the scene, was struck in the chest by a "fireball," and was severely burned over an extensive portion of his face and body.

LAW
The trial court held that the Board had a duty to properly dispose of the duplicating fluid, citing its knowledge of the likelihood that children would play in and around the dumpster and that the Dunn School was commonly the target of vandals. Wilbert F. Dunn, principal at Dunn School, testified that his school experiences one of the highest percentages of vandalism and break-ins in the New Orleans area. He also testified that he took significant precautionary measures to keep the fluid secure, including: storing the unused cans in a room to which only he, the assistant principal, and the chief custodian possessed keys; issuing only one can per grade level at a time; and collecting partially used cans and storing them securely during school holidays. Dunn candidly explained the purpose of these safeguards:
We were aware of the fact that Dunn School had a history of break-ins and vandalism and we did not want duplicating fluid to be used in setting fires.
Edward McFloyd, chief custodian at Dunn School, testified that he was aware that duplicating fluid was dangerous because it was flammable, and he verified the measures taken to keep the fluid secured. McFloyd denied ever disposing of fluid in the dumpster. Leonard testified that he and Gerald obtained the rectangular cans of duplicating fluid from the dumpster at the Dunn School. Plaintiff testified that he saw Leonard and Gerald coming from Dunn School early in the afternoon of August 28, 1984, each with two of the rectangular *957 cans of duplicating fluid. Plaintiff was eleven at the time, and Leonard and Gerald were over twelve.
The trial court found as fact that the duplicating fluid was placed in the dumpster by a Dunn School (i.e., School Board) employee and determined as a matter of law that the Board had a duty to properly dispose of the flammable fluid. However, it also concluded that plaintiff "failed to show a complete breach of the duty." It reasoned that plaintiff's evidence did not establish how long the duplicating fluid remained in the dumpster prior to the incident and that disposal of the fluid into the dumpster on a day regularly scheduled for emptying of the dumpster would not constitute a breach of the duty to properly dispose of the substance. There was testimony that trash pick-up was irregular during the summer months and that the dumpster often was not emptied until it was full. The trial court recognized the "unreasonable risk of harm to children posed by the duplicating fluid because of its flammable nature," but held, nevertheless, that the evidence failed to establish its breach, concluding that Leonard and Gerald were solely responsible for plaintiff's injuries.
The court of appeal, affirming the trial court, appears to have read into its reasoning a conclusion of law that the risk of harm operating upon these facts was not within the duty to properly dispose of the flammable liquid. Brown, 556 So.2d at 87 (citing Dunne v. Orleans Parish School Board, 463 So.2d 1267, 1270 (La.1985)). Dunne is inapposite and, moreover, the trial court simply found that disposal of partially filled cans inside the dumpster, although a cause-in-fact of plaintiff's injuries, was appropriate conduct within the scope of the duty.
The duty to properly dispose of the duplicating fluid arose because the liquid is flammable and the risk of harm, i.e. physical injury resulting from its flammability, was specifically recognized by the Board. See Malone, Ruminations on Cause-In-Fact, 9 Stan.L.Rev. 60, 73 (1956) ("[a]ll rules of conduct ... exist for purposes. They are designed to protect some persons under some circumstances against some risks.... Whenever it can be said with fair certainty that the rule of conduct relied upon by the plaintiff was designed to protect against the very type of risk to which the plaintiff was exposed, courts have shown very little patience with the efforts of defendant to question the sufficiency of the proof on cause").
The trial court's analysis of the question of a breach of this duty fails to adequately address the crucial issue of foreseeability of the risk of harm. The reasons for judgment suggest that plaintiff "should have shown that ... the dumpster had not been emptied for a period of time prior to [the accident] or through some expert testimony that the duplicating fluid was extremely flammable...." The occurrence of this accident alone, however, serves to show the extreme flammability of the duplicating fluid. The testimony is uncontroverted that a "fireball" was projected from the can of fluid. Moreover, the Board's policy manifests a self-imposed duty to properly store the substance. Clearly, these precautions were taken to ensure that the fluid did not fall into the hands of third partiespossibly children; the risk that it could were these precautions not taken, therefore, was not only foreseeable but foreseen. The operative risk of harm here, misuse of the fluid causing injury to persons or property from fire, was no less foreseeable. The record establishes that Board personnel were well aware that children played on the school grounds and rummaged in the dumpster. A duty was owed both to these children and to their potential victims. See Brown, 556 So.2d at 89. (Plotkin, J., dissenting) ("there is no difference between the recognizable risk of a minor's misuse of an inherently dangerous object and the likelihood that the minor will cause personal or property damages to others). We agree with the dissent's observation that "children who possess a flammable substance can be expected to light it, to attract other children to join in the play and to commit criminal acts or engage in other misadventures." Id. at 90.
*958 We conclude that plaintiff's injuries were reasonably foreseeable. Additionally, the fact that the conduct (disposal of a flammable substance) was squarely within the duty and that the injuries were exactly those that the duty was imposed to prevent, is suggestive that the conduct fell short of that required by, i.e. was a breach of, the duty. The many precautions taken by the Dunn School to assure that full and partially full cans of duplicating fluid are stored securely, furthermore, contradict the assertion that partially full cans can be safely disposed of in a trash dumpster to which there is easy public access. There was no expert testimony offered with respect to the chemical make-up of this duplicating fluid, but its flammable properties were known by those with the responsibility of securing it, and were tragically shown by the accident. The recognition by the Board that this duplicating fluid was a dangerous substance to be treated with special precautions, leads directly to the conclusion that it was not reasonable to dispose of several partially full cans in the Dunn School dumpster.
We must conclude that the evidence does show a breach of the duty to properly dispose of the duplicating fluid, irrespective of the length of time that the cans remained in the dumpster prior to the accident. Dunn testified the gates at the school remained open in the summer time as no attempt was made to stop children from playing on the grounds, and it would be futile to try. The dumpster was there and easily accessible to anyone on the grounds. Putting children and flammable mixtures together, unfortunately, more often than not, produces combustion. The risk of burn injuries resulting from children playing with the duplicating fluid was squarely within the scope of the duty to properly dispose of the fluid, and the Board must share responsibility for plaintiff's injuries.
In assessing the fault of the Board, we look to the factors articulated in Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 974 (La.1985). We note that the School Board was aware of the danger that children might obtain the flammable substance and create fires and that the risk was significant inasmuch as fires could have been started in or spread to the nearby housing project. There was no suggestion that the duplicating fluid was old or otherwise unusable, thus disposal of partially full cans would seem unnecessary; if disposal was necessary, some other method should have been used. The Board occupied a superior position to the children; the duty to properly dispose of the fluid was imposed to prevent a situation where the conduct of third parties, possibly children, could cause injury. Mindful of the above, we re-assess fault in the following proportions: School Board, 55%; Preston, 35%; and Kisack 10%.
The judgments of the trial court and court of appeal dismissing plaintiff's suit against the School Board are reversed, and the School Board is now cast in judgment along with Beverly Preston and Katherine Kisack as set forth above. The trial court's damage award was never at issue in the appellate process. All costs are taxed to the School Board.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
WATSON, J., concurs and will assign reasons.
WATSON, Justice, concurring.
While I agree with the result reached by the majority and much of its duty/risk analysis, the majority errs in describing foreseeability as a crucial factor. The shibboleth of foreseeability should not be a substitute for an analysis of the policy considerations involved in legal cause. See Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972) and the Dialogues at 34 Louisiana Law Review 1. Compare Pitre v. Opelousas General Hospital, 530 So.2d 1151 (La.1988). Emphasis on foreseeable risk, derived from common law principles, is inappropriate in Louisiana.
I respectfully concur.
NOTES
[1] Prior to trial Mary Brown died, and her mother, plaintiff's grandmother, Ethel Porche, was substituted as tutrix herein. The record discloses that Ms. Porche is referred to as Ethel and/or Shirley.
[2] These defendants were erroneously named "Tesack" in the petition. The proper surname is "Kisack."