JiDOUCET, Chief Judge.
The plaintiff, Elizabeth Schulker, appeals the judgment of the trial court denying her claims against New Start Corporation d/b/a the Lighthouse.
The trial judge, in written reasons for judgment, outlined the underlying facts of the case as follows:
On November 13, 1988, the plaintiff, Elizabeth Schulker, was traveling south on Louisiana Highway 3054 in Rapides Parish. The defendant, James K. Roberson, was also on Louisiana Highway 3054, headed in a northerly direction when, for reasons presumably related to his impaired and intoxicated condition, he crossed the center line into the oncoming lane of travel and struck the Schulker vehicle head-on. Ms. Schulker, who was approximately one month pregnant at the time of the accident, was nearly killed. As a result of the head-on collision, Ms. Schulker sustained a severe closed head injury with resultant brain damage, fractures of both the left and right thighs, a | ¿fractured pelvis, a fractured elbow, a broken jaw with the loss of numerous teeth, multiple lacerations with resultant scarring and numerous contusions. The evidence established that, in fact, Ms. Schulker was in a comatose state approximately two (2) weeks following the accident. In addition to the devastating personal injuries, Ms. Schulker lost her unborn child.
Ms. Schulker filed suit against Roberson, his insurer, Champion Insurance Company and her own uninsured/underinsured motorist insurer, Old Hickory Casualty Insurance Company. Later, she amended her petition to add the Louisiana Insurance Guaranty Association (LIGA), in place of Champion, and New Start Corporation. New Start Corporation operated a bar, the Lighthouse, where Mr. Roberson was allegedly drinking immediately prior to the accident. Ms. Schulker settled with LIGA prior to trial. She also settled with her parents’ uninsured/underinsured motorist insurer.
After a trial on the merits, the trial judge rendered judgment in favor of the plaintiff in connection with her claims against Roberson and Old Hickory. However, the judge denied her claims against New Start Corporation. Ms. Schulker appeals.
CONSTITUTIONALITY OF LA.R.S. 9:2800.1
La.R.S. 9:2800.1 provides in pertinent part:
A. The legislature finds and declares that the consumption of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intox *687 icated person upon himself or upon another person.
[[Image here]]
D. The insurer of the intoxicated person shall be primarily liable with respect to injuries suffered by third persons.
Ms. Schulker first argues that La. R.S. 9:2800.1 is unconstitutional.
Statutes are presumed constitutional, and the party challenging a statute’s validity must articulate a particular constitutional provision that limits the legislature’s powers. When a constitutional challenge is made, the question is not whether the ^constitution empowers, but whether the constitution limits the legislature, either expressly or impliedly, from enacting the statute at issue. Chamberlain v. State Through DOTD, 624 So.2d 874 (La.1993). In an attack upon a legislative act as falling within an exception to the legislature’s otherwise plenary power, an opponent must establish clearly and convincingly that the constitutional aim was to deny to the legislature the power to enact the legislation. Polk v. Edwards, 626 So.2d 1128, (La.1993).
State v. Clark, 94-598, p. 2 (La.App. 3 Cir. 2/21/96); 670 So.2d 493, 496.
Ms. Schulker argues that the statute creates a privileged class and deprives a class of equal protection for no valid state purpose. The Louisiana Supreme Court has outlined the appropriate method for determining claims that a statute denies equal protection.
The basic framework of analysis of such a claim is well settled. We must decide, first, whether the legislation operates to the disadvantage of some suspect class or impinges on a fundamental right explicitly or implicitly protected by the constitution, thereby requiring strict judicial scrutiny. If not, the legislative scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination.
Bazley v. Tortorich, 397 So.2d 475, 483 (La.1981). (Citations omitted.)
This ease involves no suspect class. Persons seeking to recover in tort suits do not come within the extremely limited category of disadvantaged classes recognized by the Supreme Court. Further, “[t]he statute does not classify persons on the basis of race, alienage, national origin, or discriminate against discrete and insular minorities.” Id.
Additionally, the statute does not limit the exercise of a fundamental constitutional right.
The list of rights which have been found to be fundamental may be divided as follows: Freedom of expression and association, NAACP v. Alabama ex rel Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Right to vote and participate in the Uelectoral process, Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Right to interstate travel, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Right to fairness in the criminal process, e.g., Mayer v. Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Right to fairness in procedures concerning governmental deprivations of life, liberty or property, e.g., Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Right to privacy, e.g., Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). See generally, Nowak, Rotunda & Young, Constitutional Law, 418 (1978).
Id. The right to sue in tort for the recovery of damages due to personal injury is not a fundamental right for purposes of an equal protection challenge to a statute limiting that right. Stuart v. City of Morgan City, 504 So.2d 934 (La.App. 1 Cir.1987).
Therefore, strict scrutiny of the legislation is not required. We must, however, examine the legislative scheme to determine whether it rationally furthers a legitimate state purpose and does not constitute an invidious discrimination. Bazley, 397 So.2d 475. The burden is on Ms. Schulker, *688 as the party claiming uneonstitutionality, to show that the statute has no rational basis. State v. Devall, 302 So.2d 909 (La.1974); Jenkins v. Whitfield, 505 So.2d 83 (La.App. 4 Cir.), writ denied, 506 So.2d 114 (La.1987). It is important to note that La.R.S. 9:2800.1 represents the legislative enactment of the Louisiana Supreme Court’s holding in Thrasher v. Leggett, 373 So.2d 494 (La.1979). After examining the record, we cannot say that Ms. Schulker has carried her burden of showing the lack of a rational basis for the statute. Further, we find that the state has an interest in narrowing the scope of liability of tavern keepers and social hosts and in allocating the consequences of irresponsible drinking to the person doing the drinking. La.R.S. 9:2800.1 is rationally related to this interest. Further, similarly situated persons are all treated alike under the statute. IsAccordingly, we find the plaintiff has not carried her burden of showing that the statute is unconstitutional.
ASSUMPTION OF LIABILITY
Ms. Schulker next argues that the Lighthouse, by hiring security guards, assumed a duty to protect the motoring public from intoxicated patrons.
If a person undertakes a task which he had no duty to perform, he must perform the task in a reasonable and prudent manner. Marsalis v. LaSalle, 94 So.2d 120 (La.App.Orl.Cir.1957). Negligent breach of a duty which has been voluntarily or gratuitously assumed may create civil liability. See Brown v. Tesack, 566 So.2d 955, 957 (La.1990); Harris v. Pizza Hut, 455 So.2d at 1371; Carlin v. Rapides Parish Police Jury, 584 So.2d 337, 339 (La.App. 3d Cir.1991); Barnes v. Bott, 571 So.2d 183, 186 (La.App. 4th Cir.1990), writ denied, 573 So.2d 1141 (La.1991); Restatement (Second) of Torts § 324(A).
Crane v. Exxon Corp., U.S.A., 613 So.2d 214, 221 (La.App. 1 Cir.1992), opinion on remand, 633 So.2d 636 (La.App. 1 Cir.1993).
The question of whether a person has voluntarily assumed a duty is one of fact. Accordingly, the determinations of a trier of fact in this regard are entitled to great deference. In this ease, the trial judge gave the following reasons:
The court likewise does not feel that the Lighthouse undertook a duty to protect the motoring public from intoxicated patrons leaving the club. The auxiliary deputies were not hired to screen patrons leaving the club for intoxication and prevent them from leaving in vehicles if inebriated. Their stated duties were to control traffic, prevent vandalism, prevent the entrance of intoxicated persons into the club, maintain order in both the interior and exterior of the establishment and generally uphold the law. Deputy Thornhill testified that, when possible, the auxiliary deputies would prevent intoxicated patrons from leaving in vehicles if they detected such. They would do such, he testified, because they were police officers sworn to uphold the law and not because it was a policy or directive of the Lighthouse owner or management.
| (After reviewing the record, we find no error either in the testimony as outlined by the trial judge in his reasons for judgment or in his conclusion that the Lighthouse did not assume a duty to protect the motoring public from intoxicated patrons.
NUISANCE
Finally, Ms. Schulker argues that the Lighthouse constituted a nuisance in that its activities went beyond legitimate business or social activity intended to be protected by La.R.S. 9:2800.1.
LSA-C.C. articles 667 through 669 are the foundation for nuisance actions in our law. These articles detail the obligations of proprietors of property toward one another. Jurisprudence interpreting these articles establishes that “work’ includes activity as well as structure under Article 667. Chaney v. Travelers, 259 La. 1, 249 So.2d 181 (1971). Whether or not an activity constitutes a nuisance is a question of fact dependent upon the circumstances of each particular case. Fos v. Thomassie, 26 So.2d 402 (Orl.La.App.1946). The operation of a nightclub is not a nuisance per se in Louisiana. Scott v. LeCompte, 260 So.2d 345 (La.App. 1st Cir.1972). [Footnote omitted.]
*689 Thornburg v. McMillin, 392 So.2d 1119, 1123-1124 (La.App. 3 Cir.1980), writ denied, 399 So.2d 599 (La.1981).
One claiming damages arising out of a condition constituting a nuisance has the burden of proving both that the condition constitutes a nuisance and that damages resulted therefrom. Butler v. Baber, 529 So.2d 374 (La.1988). The evidence in this case does not establish that operation of the Lighthouse constituted a nuisance. Additionally, we agree with the trial court that:
The plaintiffs “nuisance theory” can only be viewed as a roundabout attempt at circumvention of La.R.S. 9:2800.1. Whether one considers these types of establishments a “nuisance” or not, the unequivocal fact is, to a large extent, legislatively dictated. Legislation, being a solemn expression of legislative will, must be applied as written absent any ambiguity. Civil Code Article 2, 9.
|7C0NCLUSI0N
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by the plaintiff/appellant.
AFFIRMED.