598 So.2d 531 (1992)
Virginia D. Lott MAGEE, Individually and for and on Behalf of her Minor Children, Justin Reed Magee and Amanda Delaine Magee
v.
Willie F. COATS, Louisiana Farm Bureau Mutual Insurance Company and/or Southern Farm Bureau Casualty Insurance Company, State Farm Mutual Automobile Insurance Company.
Barbara Magee THOMPSON, for and on Behalf of her Minor Child, Krystal Magee THOMPSON
v.
Willie F. COATS, et al.
Nos. CA 91 0345, CA 91 0346.
Court of Appeal of Louisiana, First Circuit.
April 10, 1992.
*532 David Cheatham, Bogalusa, for plaintiff-appellant.
Larry J. Green, Covington, for plaintiffs-appellants Barbara and Krystal Thompson.
Bruce C. Dean, New Orleans, for defendant-appellee.
Before COVINGTON, C.J., and LeBLANC and WHIPPLE, JJ.
COVINGTON, Chief Judge.
These consolidated cases arise from a fatal automobile accident which occurred on May 14, 1984, when a pickup truck driven by defendant Willie F. Coats[1] collided with a 1981 Chevrolet Malibu driven by William Edmond Magee in Bogalusa, Louisiana. Magee was killed in the collision. His former wife, Barbara Magee Thompson, brought suit on behalf of her minor child, Krystal Magee Thompson, against Coats, his insurer, Louisiana Farm Bureau Mutual Insurance Company and/or Southern Farm Bureau Casualty Company,[2] and against State Farm Mutual Automobile Insurance Company, Magee's underinsured motorist carrier. His widow, Virginia Delaine Lott Magee, brought suit individually and on behalf of her minor children, Justin Reed Magee and Amanda Delaine Magee, against the same defendants.
The cases were settled as between Willie F. Coats and his insurer, Mississippi Farm Bureau, and plaintiffs, and Coats and Mississippi Farm Bureau were dismissed from the suit. The cases between plaintiffs and the remaining defendant, State Farm Mutual Automobile Insurance Company, were tried by jury. From an adverse judgment, plaintiffs appeal.
Plaintiffs urge two errors: first, the jury's finding that the fault of Willie F. Coats was not a legal cause of the accident, despite its finding that Willie F. Coats was at fault; and second, the trial court's failure to grant plaintiff's motion for judgment notwithstanding the verdict, or for new trial. Plaintiffs do not argue on appeal that the jury charges given by the judge at trial were erroneous, or either that the jury's answers to interrogatories were inconsistent with each other and inconsistent with the general verdict, or, alternatively, consistent with each other but inconsistent with the general verdict under La.Code Civ.Pro.Ann. art. 1813 D. and E. We note that were the latter problem posed, the entry of a judgment notwithstanding the verdict would not be appropriate. La.Code Civ.Pro.Ann. art. 1813 E. Plaintiffs did not at any time object to the jury instructions.
Plaintiffs also assigned as error the trial court's failure to grant their motion for judgment notwithstanding the verdict or, alternatively, for new trial under La. Code Civ.Pro.Ann. art. 1811. A trial court is not entitled to weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of facts for that of the jury in considering a motion for judgment notwithstanding the verdict. Wooten v. Louisiana Power and Light Co., 477 So.2d *533 1142 (La.App. 1st Cir.1985). We agree with the trial court's denial of plaintiffs' motion.

FACTS
The accident occurred near the intersection of Sullivan Drive, a four-lane north-south state highway, and St. Louis Street in Bogalusa. Coats was headed south on Sullivan Drive. The speed limit on Sullivan Drive at that point is thirty-five miles per hour. Coats was traveling behind a ten-wheel loaded lumber truck driven by Steven Wheat.
Wheat was attempting to turn right onto St. Louis Street; he slowed down and put on his right turn signal. Coats pulled into the left-hand inside lane to go around Wheat. Wheat began making his turn and as he did so, he saw the Magee vehicle at the intersection of St. Louis Street and Sullivan Drive, at the stop sign. Wheat testified that as he began to make his right turn, he noticed the Coats truck on his left through the side mirror. He saw Magee pull out from the stop sign. Coats' pickup truck collided with the Magee vehicle at that point. Wheat saw Magee thrown across to the passenger side of the car. He was dead when the police arrived.
Wheat testified that he really could not say whether Coats was in a position to see Magee or not, and he could not testify as to how fast Coats was traveling. He testified that he often made such a right-hand turn in his truck, which was a two-ton Chevrolet truck with a twenty foot flatbed on the back of it. He didn't think Coats could have avoided the accident; it happened in just a matter of seconds.
Coats testified by video deposition that he was traveling about twenty-five yards behind the Wheat lumber truck; he testified that although he could not remember how fast he was going, he knew he was not traveling over the speed limit because he had just checked his speed because of the propensity of the Bogalusa police to issue tickets. When he was questioned at the police station, he stated that he was not traveling over the speed limit; however, he did not know what the speed limit was.
He believed the speed of the Magee vehicle was at least fifteen miles per hour at impact. Coats testified that the Magee vehicle "shot out like a bullet out of a gun" from the intersection. He didn't have time to stop or to swerve. He testified that by the time he hit his brakes, he hit the Magee vehicle. Coats had been a truck driver for thirteen and one-half years at the time of the accident.
Assistant Police Chief Harry Hoppen of the Bogalusa police department testified that he was dispatched by the radio dispatcher to the scene of the accident on May 14, 1984. Concerning damage to the Magee vehicle, he testified that the impact caused damage to the driver's side door, pushing it all the way into the steering column about sixteen inches. The headrest was dislodged from its mount and pushed to the right. He also testified that he had performed skid tests at the scene, and the skidmarks were twenty-four feet prior to impact on the front right and front left, and the same on the rear right and rear left before impact; after impact, the skidmarks were ten feet long. On cross-examination, Hoppen testified that the skidmarks were thirty-four feet before impact.
Raymond Burkhart testified for the plaintiffs as an expert in accident reconstruction. Mr. Burkhart is an attorney, a certified public accountant, and was a captain with the New Orleans police department; he has completed numerous courses in accident reconstruction. Burkhart testified that in his opinion there were three primary causative factors to the accident: the speed of the Coats vehicle just prior to the accident, the fact that both drivers' vision was obscured by the lumber truck; and the failure of Magee to yield the right of way to oncoming traffic. He testified that he visited the accident site twice and took different measurements; during the second visit, he and another expert in the case found the coefficient of friction to be.82, which varied from that found by another police officer who had made measurements of the skidmarks.
Burkhart used both the twenty-four feet and thirty-four feet measurements of skidmarks *534 to make his calculations. He determined that the speed of the Coats vehicle just prior to impact was forty-five miles per hour. He also testified that from his calculations of the turn radius of the Wheat vehicle and from the final position of the vehicle, the Wheat lumber truck could not make the right turn onto St. Louis Street from Sullivan Drive without going into the inside southbound lane.
Burkhart testified that, had Coats been driving thirty-five miles per hour, assuming thirty-four feet of skidmarks, the accident would not have happened as it did; there would have been no collision. If the actual length of skidmarks was twenty-four feet, there would have been a minimal impact near the left rear of the Magee vehicle. On cross-examination, he testified that the discrepancy in the police report as to the length of skidmarks could be attributed to the fact that one of the investigating officers, Ernie Wells, who also testified by video deposition, had subtracted the length of the wheelbase, ten feet, to arrive at his figure of twenty-four feet of skidmarks. Because of the discrepancy, Wells' calculations of the coefficient of friction was too high, making his estimate of Coats' speed too high. Burkhart's own calculations to arrive at the forty-five mile per hour speed were based on the total distance from pre-impact to final rest. Burkhart also thought that the Coats vehicle could have been visible to Magee at some point while Magee was stopped at the stop sign, despite the obstruction by the Wheat lumber truck and buildings.
Captain Ernie Wells testified by video deposition that he had investigated the accident for the Bogalusa police department in his capacity as accident investigator for all fatal accidents. Wells had performed this function for about a year at the time of the accident. He was qualified as an expert in accident investigation and accident reconstruction.
Wells made measurements at the scene and did skid tests, using a patrol vehicle, to determine the length of the skidmarks and the coefficient of friction. He calculated the coefficient of friction to be 1.57, which was extremely high in his own experience; therefore, he did the tests a second time, but arrived at the same figures. He estimated Coats' minimum speed to be thirty-nine miles per hour, but believed his actual speed to be about fifty miles per hour. The speed at impact was twenty-five miles per hour. He testified that the length of the skidmarks, based on his tests performed several hours after the accident, was thirty-four feet.
Wells thought that "the major contributing cause" of the accident was the failure of the Magee vehicle to yield; however, he thought that the other causes were the speed of the Coats vehicle and the obscurement of the intersection by the lumber truck and by a house next to the street. He testified the accident would not have happened if Magee had remained stopped at the stop sign; he also believed that the accident would not have happened had Coats been driving at thirty-five miles per hour.[3]
Oscar Griffith also testified as an expert in technical accident reconstruction, using the application of physical principles to an automobile accident. Griffith teaches physics at the University of New Orleans. He had attended a one-week seminar in accident reconstruction and had ten years of experience at the time of trial. He testified as to his opinion about the causes of the accident. His testimony agreed with that of Burkhart that there were three causes; the speed of Coats, the obscurement of both drivers' vision by the Wheat truck, and Magee's failure to yield at the stop sign. He estimated pre-braking speed of the Coats vehicle as in a range somewhere in the low forties to almost fifty miles per hour. At impact, he believed the speed of the Coats vehicle was thirty-five miles per hour. For thirty-four feet of *535 skidmarks, the pre-braking speed would be forty-five miles per hour; for twenty-four feet of skidmarks, the pre-braking speed would be forty-two miles per hour. The difference in Coats' reaction time between thirty-five miles per hour and forty-two miles per hour would be one-half second. He didn't know whether Magee saw Coats' truck at any time before the accident.
The defense called no expert witnesses to testify concerning the reconstruction of the accident. Both sides called experts in economics to testify about damages.

LAW
The following pertinent jury instructions were given to the jury:
The ordinarily prudent person will normally obey the statutes which apply to his conduct, but in exceptional circumstances, even a violation of a statute may be reasonable. You must consider, in the light of all the circumstances, whether an ordinarily prudent person in Mr. Coats's [sic] position would be reasonable in violating the statute. If so, then the violation is not substandard conduct. But if the violation is unreasonable and therefore below the standard of care to which we hold Mr. Coats in this case [sic] In this case it has been alleged that Mr. Coats was traveling at an excessive speed. The following provisions of law apply to his conduct: a violation of the speed limit is negligence only when the speed of the driver is determined to be a legal cause of the accident. A driver on a favored street has a duty of ordinary care toward drivers entering from side streets. Even though he is traveling on the favored street, he is not relieved from the duty of exercising ordinary care of having his car under control and operating it at a reasonable and proper speed while approaching an intersection.
A driver may be negligent due to traveling at an excessive speed, even if driving at a speed less than the posted speed limit, if the circumstances require a reduction in speed below the minimum speed permitted by law.
A motorist on a favored street has the right to assume that any driver approaching the intersection on a less-favored street will yield the right of way. This right-of-way driver can indulge in this assumption until he sees or should have seen the other car has not yielded.
As to the requirement that Mr. Magee's death be caused by Mr. Coats's [sic] conduct, I do not mean that the law recognizes only one cause of any injury, consisting of only one factor or thing, or the conduct of only one person. On the contrary, may [sic] factors or things or different persons may operate at the same time, either independently or together, to cause injury or damage. You should resolve this question by deciding whether Mr. Magee would have probably have not [sic], probably not would have suffered the death in the absence of Mr. Coats's [sic] or a third party's conduct. If Mr. Magee probably would have died regardless of what Mr. Coats did, then you must conclude that the death was not caused by Mr. Coats, and render a verdict for the defendant, State Farm. If, on the other hand, Mr. Magee probably would not have died in the absence of Mr. Coats's [sic] conduct, then you must conclude that Mr. Coats's [sic] conduct did play a part in Mr. Magee's death.
The following special verdict form was given to the jury, in pertinent part:
1) Was Frank Coats at fault? ___ no. ___yes.
If you answered yes, proceed to the next question. If you answered no, go no further. You have rendered a verdict for the defendant. Sign and date this form and return to the courtroom.
2) Was the fault of Frank Coats a legal cause of the accident?
___ no. ___yes.
If you answered yes, proceed to the next question. If you answered no, go no further. You have rendered a verdict for the defendant. Sign and date this form and return to the courtroom.
The jury answered "yes" to the first question and proceeded to the next question, whether the fault of Frank Coats was *536 a legal cause of the accident. They answered "no" to that question, and did not answer the remaining interrogatories.
Plaintiffs assert that this finding is inconsistent with the jury's finding that Coats was at fault, because once it was established that he was speeding, the role of speeding in causation was also established; causation, they argue, follows inevitably. Plaintiffs go on to argue that there was no evidence to support the jury's finding that Coats' fault was not a legal cause of the accident, and that the jury's finding was therefore manifest error.
Defendants argue in rebuttal that the jury found no causation because plaintiffs failed to prove that the collision would not have occurred if Coats had been driving at thirty-five miles per hour; thus, they argue, plaintiffs failed to meet their burden of proof for cause-in-fact.
Defendants further argue that the evidence as to speed of the Coats vehicle was confusing and that the jury was not clearly wrong in concluding that Coats was not speeding.
The standard to be applied here by us is whether the jury's decision is manifestly erroneous. If there is a reasonable factual basis for the jury's verdict, we must then review the record to determine if the finding is in fact reasonable in light of all of the evidence. Rosell v. Esco, 549 So.2d 840 (La.1989). Because we find, from our review of the record in its entirety, that there was a reasonable basis for the jury's finding that Coats' fault was not a legal cause of the death of William Magee, we affirm.
Legal cause consists of cause-in-fact as the initial inquiry; the inquiry may be divided into whether Coats' negligent conduct was the cause-in-fact of the collision, and whether State Farm should be relieved of liability because of the intervening negligence of Magee. Dixie Drive It Yourself System New Orleans Company, Inc. v. American Beverage Company, 137 So.2d 298 (La.1962). The test for cause-in-fact may be the "substantial factor" test, or the "but-for" test; in Dixie Drive It Yourself, the court found that the negligent conduct was a substantial factor if the accident would not have occurred without it. Dixie Drive It Yourself, 137 So.2d at 302.
When two causes concur to bring about an event, and either cause, operating alone, would have brought about the event absent the other cause, the appropriate test is the "substantial factor" test. Lejeune v. Allstate Insurance Company, 365 So.2d 471 (La.1978). This test is similar to the "but for" test, except that both negligent acts or omissions are causative in this situation rather than only one. Trahan v. State of Louisiana, Department of Transportation and Development, 536 So.2d 1269 (La.App. 3rd Cir.1988), writ denied, 541 So.2d 854 (La.1989). Some cases require both tests to be met under the duty-risk analysis, terming "but for" the test for cause-in-fact, and "substantial factor" the test for legal cause. See, Martyniuk v. DL-Mud, Inc., 526 So.2d 846 (La.App. 1st Cir.), writ denied, 531 So.2d 276 (La.1988). In any event, "more than one legally responsible cause can, and frequently does, contribute to a vehicular collision." Dixie Drive It Yourself, at 302.
The jury in the present case was instructed that the fault of Coats, ostensibly in violating safety ordinances by driving over the posted speed limit, was negligence only if it was a legal cause of the accident. The jury went on to find that Coats was "at fault," but that his fault was not a "legal cause" of the accident.
The evidence presented by plaintiffs concerning Coats' alleged speeding was confusing and ambiguous. Although nobody testified that Coats was actually driving the speed limit, the range of speeds testified to was anywhere from thirty-eight miles per hour to fifty miles per hour. The testimony concerning the length of skidmarks originally estimated by the investigating police officers, Ernie Wells and Harry Hoppen, was likewise confusing; whether the skidmarks were twenty-four feet or thirty-four feet was never entirely clear, and all experts engaged by the plaintiffs based their calculations upon both twenty-four and thirty-four feet skidmarks. The *537 speed estimates varied depending upon that figure, as Dr. Griffith and Dr. Burkhart testified.
The differences between the plaintiffs' own experts concerning the coefficient of friction figures were also a factor which may have influenced the jury to believe that Coats' conduct was not a legal cause of the accident. Both Wells and Burkhart believed that Wells' figure of 1.57 for the coefficient of friction was high, although Wells believed that his skid tests were done accurately and that the figure was correct. Burkhart's figure of .82 was considerably lower, and resulted in a lower speed for the Coats vehicle than that arrived at by Wells.
All of plaintiffs' experts were in agreement that there were three different factors combining to cause this automobile accident: the failure of Magee to yield at the stop sign, the speed of the Coats vehicle, and the obscurement of the intersection by the Wheat lumber truck. Wells believed that the failure of Magee to yield was "the major contributing factor," although he refused to assign any weight to the three factors.
The jury was clearly entitled to find that plaintiffs failed to meet their burden of proof for "legal cause." Wells testified that the accident would not have happenedthe definition of the "but for" testif either Magee had yielded the right of way or if Coats had been driving the speed limit. Burkhart testified that, assuming thirty-four feet of skidmarks, there would have been no collision; at twenty-four feet, there would have been a minimal collision. Griffith testified that the difference in reaction time between a vehicle traveling thirty-five miles per hour and forty-two miles per hour would have been one-half second. Coats testified he had no time to stop; as soon as he applied his brakes, the two vehicles collided.
Given conflicting and inconclusive evidence on whether the accident would have happened absent Coats' alleged speeding, and given the uncontradicted evidence concerning Magee's failure to yield the right of way and his entry into the intersection at a speed of fifteen to twenty miles per hour, the jury's findings are not clearly wrong. It was entitled to find that Coats' conduct was not a "substantial factor" in bringing about the accident where the accident may have happened absent his speeding, and where other factors contributed to the accident.
Coat's negligence, even if it is conceded to be a cause-in-fact of the accident, is not necessarily a legal cause unless the second part of the Dixie Drive It Yourself inquiry is met: should a defendant be relieved of liability because of the intervening negligence of another? Under a duty-risk analysis, was the risk of Magee's death the harm protected against by the imposition of the thirty-five mile per hour speed limit? Yes; but it was also the harm sought to be avoided by the imposition of the rule that left-turning motorists must yield to oncoming traffic on favored roadways, and remain stopped at intersectional stop signs until it is safe to proceed. Confronted with evidence of several causes of the accident which led to Magee's death, the jury found that Coats' negligence was not a legal cause of the accident. We will not disturb that finding.
The judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] This defendant's full name is Willie Frank Coats; he is referred to both as "Frank" and as "Willie F." throughout these proceedings.
[2] Mississippi Farm Bureau answered on behalf of its insured, Willie F. Coats.
[3] The video depositions of Coats and Wells were viewed by this court in their entirety; no transcript was made available. No attachments to the depositions were included in the record before us. Therefore, a chart utilized by Captain Wells in his deposition, as well as the accident report itself, were not available to this court.