647 So.2d 1294 (1994)
Jean JUNEAU
v.
Craig STRAWMYER, et al.
No. 94-CA-0903.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1994.
*1296 Michael D. Riley, Birdsall, Rodriguez & Kehoe, New Orleans, for plaintiff-appellant, Jean Juneau.
Timothy G. Schafer, Schafer & Schafer, New Orleans, for defendants-appellees, Craig Strawmyer, Quarles Drilling Co., and U.S. Fidelity & Guar. Ins. Co.
Claude D. Vasser, C. David Vasser, Jr., Vasser & Vasser, Metairie, for defendants-appellees, Craig Strawmyer and Farmers Ins. Co., Inc.
Before CIACCIO, LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
This case involves three issues: (1) whether the presumption of causation in fact established in Housley v. Cerise, 579 So.2d 973 (La.1993) applies to the facts; (2) whether the trial court properly admitted evidence of the plaintiff's blood alcohol level at the time of a subsequent accident; and (3) whether the quantum award is sufficient. We hold that Housley is not applicable, that the trial court properly admitted evidence of the plaintiff's blood alcohol level, and that the quantum award is not manifestly erroneous. Thus, we affirm.
In this case, plaintiff, Jean Juneau, appeals a jury award of $10,569.80 in his favor. Defendants, Craig Strawmyer, Quarles Drilling Co., United States Fidelity & Guaranty Insurance Co., and Farmers Insurance Company, Inc., have not appealed the jury verdict or the judgment entered.

FACTS
On March 8, 1989, plaintiff, while stopped at a red light near the Superdome, was rear-ended by defendant, Craig Strawmyer, who was driving a rented car. According to Mr. Strawmyer's testimony, he was stopped at the red light when the light turned green. He lifted his foot from the brake, may have tapped the accelerator to get the car moving, and went forward about five or ten feet, when he made contact with the rear of plaintiff's car. As a result of this accident, plaintiff eventually brought this suit for personal injuries.[1]
*1297 According to plaintiff, the principal injury he sustained as a result of this accident was to his back. He contends that a July, 1991, discectomy and bone fusion at L4-5 was the proximate result of defendants' negligence. In response, defendants argue that plaintiff had pre-existing back injuries and that those injuries eventually necessitated the discectomy and bone fusion. At trial, defendants established that plaintiff had suffered a work-related injury at L4-5 in 1984. As a result of this injury, in 1985 plaintiff underwent chemonucleosis via a chemopapayne injection in an effort to shrink the herniated disc so that it no longer impinged on his nerve roots. Although the results of the chemopapayne injection were disputed at trial, evidence showed that plaintiff subsequently underwent a laminectomy at L5-S1 in 1986. During the laminectomy, which was performed by Dr. Michael Carey, a neurosurgeon, Dr. Carey palpated plaintiff's L4-5 disc and, because he found it to be nonbulging at that time, no surgery was conducted at that level. However, Dr. Carey did admit on cross-examination that it was impossible for him to examine the lateral aspects of the disc and thus he could not attest to any potential abnormalities that might exist there.
Further complicating plaintiff's claim for damages is the fact that on April 13, 1989, a little more than a month after the accident giving rise to this suit, plaintiff was involved in a one-car accident in Bay St. Louis, Mississippi. According to plaintiff's testimony during his case-in-chief, he swerved to avoid an oncoming car and ran his truck off the road and into a ditch. On cross-examination, he denied losing consciousness or being intoxicated, although he did admit that he had drank "two beers." During their case-in-chief, defendants called Dr. Bertin Chevis, who treated plaintiff in the hospital for injuries sustained in the April 13th accident. Dr. Chevis testified, through deposition, that plaintiff stated he had been drinking, fell asleep at the wheel of his car, and ran it into a ditch. According to Dr. Chevis, plaintiff indicated that his car had overturned a number of times and that he had been "out" for about 45 minutes. A blood test conducted at the emergency room revealed that plaintiff's blood-alcohol level was .169. Plaintiff objected to Dr. Chevis' testimony concerning his blood alcohol level, saying that it was unduly prejudicial. The trial court denied plaintiff's pre-trial Motion in Limine, overruled his renewed objections at trial, and permitted Dr. Chevis' deposition testimony to be heard by the jury with slight modifications.
The jury ultimately returned a verdict in favor of plaintiff. It awarded him $10,569.80 in damages in globo, which apparently represents $569.80 for property damage to plaintiff's car[2] and $10,000 in general damages. Plaintiff has appealed that verdict.

ISSUES
Plaintiff assigns three errors on this appeal:
1. The trial court erred in refusing to give a jury charge under Housley v. Cerise, 579 So.2d 973 (La.1991), in which the Louisiana Supreme Court held that in a delictual action, an injury to the plaintiff is presumed to have resulted from an accident if before the accident the plaintiff was in good health and after the accident symptoms of the injury appeared.
2. The trial court erred in denying plaintiff's Motion in Limine regarding evidence of plaintiff's blood alcohol level following the April 13, 1989 accident.
3. The jury erred in awarding plaintiff only $10,569.80 in damages.
Each of these assignments of error will be discussed in turn.

Presumption of Causation in Fact
The problem of proving causal responsibility can be complex and difficult. Louisiana has adopted the cause-in-fact inquiry as part of the duty-risk analysis. See Roberts v. Benoit, 586 So.2d 131, 140 (La. *1298 1991). The cause-in-fact issue relates to the causal connection between the defendant's wrongful conduct and the plaintiff's injury. The generally-accepted test for making that inquiry is the but-for test, which asks whether the injury in the litigation would have occurred if the defendant had not engaged in the wrongful conduct in question.
However, the cause-in-fact inquiry does not operate to solve all causation issues. The Louisiana Supreme Court has noted this enigma. Brown v. Tesack, 566 So.2d 955, 957 (La.1990).
Generally, the plaintiff is normally required to prove by a preponderance of the evidence, more probably than not, that the injuries in the suit would not have occurred but for the defendant's wrongful conduct. However, Louisiana, like other jurisdictions, has modified and altered the causation rule, in limited situations. One device used by the Louisiana Supreme Court is the presumption of causation in fact.

The Housley Charge
In Housley v. Cerise, 579 So.2d 973 (La. 1991), the Louisiana Supreme Court considered the case of a woman who was six-months pregnant and who fell down the steps in her townhouse. She and her husband brought suit against their landlords, claiming that the landlords were at fault in allowing an air conditioner to leak onto the floor and create a wet spot on which she slipped. Plaintiffs contended that the fall caused the wife's water bag to break, requiring her to undergo an emergency caesarean section four days later. As a result, their child was born three months premature and allegedly would suffer serious complications with her health for the remainder of her life.
The trial court ruled in plaintiffs' favor, but the court of appeal reversed. It held that the plaintiffs had failed to prove causation between the accident and the subsequent premature delivery of plaintiffs' child. On appeal, the supreme court reversed the court of appeal and reinstated the judgment of the trial court. After reviewing the medical evidence submitted at trial, the court stated that
"[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition."
Id. at 980 (quoting Lucas v. Insurance Co. of N. Am., 342 So.2d 591, 596 (La.1977)). In light of this standard, the court held that plaintiffs had carried their burden of proof vis-a-vis causation.
The presumption of causation relied on by the supreme court in Housley was not an original jurisprudential development. In fact, this presumption had first been fashioned by the supreme court some twenty-three years prior in Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816, 827 (1968) (on rehearing). Additionally, the same presumption was relied on in Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973) and in Lucas. However, each of these cases arose in the context of a worker's compensation claim. Housley, then, represents an extension of this presumption into the realm of general delictual actions.
Even prior to Housley, some circuits had already applied this presumption of causation to cases outside of the worker's compensation context. Arceneaux v. Howard, 633 So.2d 207, 210 n. 1 (La.App. 1st Cir.1993), writ denied, 634 So.2d 833 (La.1994) (citing Simpson v. Caddo Parish School Board, 540 So.2d 997 (La.App.2d Cir.1989); Wisner v. Illinois Central Gulf Railroad, 537 So.2d 740 (La.App. 1st Cir.1988), writ denied, 540 So.2d 342 (La.1989); Heath v. Northgate Mall, Inc., 398 So.2d 132 (La.App. 3d Cir.1981)); see also Petersen v. State Farm Automobile Insurance Co., 543 So.2d 109 (La.App. 3d Cir.), writ denied 546 So.2d 1223 (La.1989); Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App.2d Cir.1986); Miller v. Allstate Insurance Co., 221 So.2d 908 (La.App. 1st Cir.1969). However, "Housley leaves no uncertainty that the presumption is applicable *1299 to personal injury cases in which the medical evidence shows there is a reasonable possibility of causal connection between the accident and the medical condition." Arceneaux, 633 So.2d at 210.
Based on Housley, the plaintiff in this case requested that the trial judge charge the jury as follows:
You are charged that the plaintiff, Jean Juneau, need not prove the causal relationship between his accident and injury which required subsequent surgery, by medical probability. In order to meet the preponderance of evidence rule previously explained to you, plaintiff, Jean Juneau, need only show the relationship between the automobile accident and the subsequent low back surgery by a reasonable medical "possibility."
The trial court refused to give this instruction. Instead, it charged that jury as follows:
Whenever it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the accident or the injury and the accident or injury was either a direct result or a reasonable probable consequence of that act or omission, then that act or omission could be a cause in fact of the accident or injury.
The court refused to give the proposed instruction, reasoning that Housley only applies to cases where the plaintiff is healthy prior to his accident and that the case sub judice involved an aggravation of a pre-existing injury, i.e., that plaintiff was not healthy prior to his March 1989 accident.
Plaintiff strenuously argues that Housley is applicable because prior to his March 1989 accident, his L4-5 disc was asymptomatic and none of his attending physicians were contemplating surgery at that level. According to plaintiff, his residual back pain prior to the March 1989 accident stemmed from the laminectomy at L5-S1 he underwent in 1986. Plaintiff also places great emphasis on the fact that another of his physicians, Dr. L.S. Kewalramani, specifically testified that the 1991 surgery was proximately caused by the March 1989 accident.
In determining whether the trial court erred in refusing to give the requested charge, we find it instructive to break Housley down into its component parts. In order for a plaintiff to benefit from the Housley presumption of causation, he must establish three things by a preponderance of the evidence. First, he must prove that he was in good health prior to the accident at issue. Second, he must show that subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested themselves afterwards. And third, he must demonstrate through evidencemedical, circumstantial, or common knowledgea reasonable possibility of causation between the accident and the claimed injury. See Housley, 579 So.2d at 980; Wisner v. Illinois Central Gulf Railroad, 537 So.2d 740, 745 (La.App. 1st Cir.1988), writ denied, 540 So.2d 342 (La.1989).
Applying this tri-partite test to the evidence of this case, we conclude that the trial court did not err in refusing to give the requested charge. Our review of the record convinces us that plaintiff did not succeed in proving that he was in "good" health prior to the March 8th accident. Perhaps the most telling piece of evidence was Dr. Kewalramani's supplemental deposition, during which he was asked to compare his examination reports of July 1988 and April 1993. Those reports contained the following statements:
 April 5, 1993 Report July 26, 1988 Report
 Partial loss of lordotic curve Partial loss of lordotic curve
 Increased tissue turgescence Increased turgescence of tissues in the lumbar
 region.
Mild spasm of paraspinal muscles bilaterally Bilateral mild spasm of paraspinal muscles
 from L3 to S1 along L3-S1
*1300
 April 5, 1993 Report July 26, 1988 Report
Diffused tenderness in lumbar region with Diffused tenderness along lumbar region
localization at L4, 5, S1 spinous processes with localization of tenderness at L4-5 and
 and corresponding paraspinal gutter S1 spinous processes and corresponding spinal
 gutter
Lumbar motions were restricted by 35-40% Lumbar motions were restricted by 35% on
 on flexion extension axis flexion extension axis
Patient was unable to reverse the curvature Patient was unable to reverse the curvature
Percussion at spinous processes at L4, 5, S1 Percussion of the spinous processes at L4-L5
 roused complaints of increased pain and S1 roused complaints of increased
 pain
Pounding on heels roused complaints of increased Pounding on heels roused complaints of increased
 pain pain
Pelvic rolling roused complaints of increased Pelvic rolling roused complaints of increased
 pain pain
Even to the untrained eye, this comparison clearly shows that there was no significant change in plaintiff's condition between July of 1988, eight months prior to the accident at issue in this case, and April of 1993, four years post-accident. The only notable differences between the two observations were the following entries in the July 1988 report that were absent from the April 1993 report: "Increased sensitivity was reported by patient along right renal angle. Right and left lateral flexion was limited by 20%." However, we find the absence of these entries to be of little consequence. The major findings of plaintiff's pre-accident and post-accident examinations were nearly identical. As such, plaintiff failed to prove he was "healthy" prior to the accident in question as required by Housley. Accordingly, the trial court did not err in refusing to give the requested jury charge.
Moreover, even if this case were viewed as one of aggravation of a pre-existing injury so that "health" in the strict sense of the word is not required, plaintiff failed to satisfy the third prong of the Housley test: establishing by a preponderance of the evidence a causal connection between the act complained of and the subsequent injury. See Housley, 579 So.2d at 980; see also Fletcher v. Langley, 631 So.2d 693, 698 (La.App. 3d Cir.1994); Harrigan v. Freeman, 498 So.2d 58, 62 (La. App. 1st Cir.1986). To the extent that plaintiff's pre-accident and post-accident conditions were identical in all meaningful respects, plaintiff did not carry his burden of proof as to medical causation.
Plaintiff's challenge to the causation charge given to the jury raises interesting theoretical questions. The terms "substantial part in bringing about or actually causing..." has created jurisprudential confusion. In one sense, it has become a substitute or alternative for the but-for test in cases in which two causes concur to bring about an event, and either cause, operating alone, would have brought the event absent the other cause. Magee v. Coats, 598 So.2d 531, 536 (La.App. 1st Cir.1992); Roberts v. Benoit, 605 So.2d 1032 (La.1992), on rehearing; Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1967).
In this case, the substantial factor test was technically incorrect because there was only one cause, the rear end collision, which operating alone, would have caused the injury. The defendant's conduct was by itself sufficient to cause the resulting injury. The cause in fact, but-for inquiryi.e., what would have happened without the defendant's negligent conduct?would answer the causation question more reliably. The jury's response would indicate whether the particular injuries would still have occurred had the defendant not acted negligently.
However, notwithstanding this theoretical error, we do not find that the jury was misled or confused about the difference between the but-for and substantial factor tests. The lawyers argued the causation problem to the jury. We find that the substantial factor test was sufficiently intelligible *1301 to the jury and provided an adequate standard for them to decide the causation issue, although technically incorrect.
The second problem with the jury charge submitted is the standard of proof. The charge imposed upon the plaintiff required proof to "reasonable probable consequence." The plaintiff's requested charge was "reasonable medical possibility." This is not a case like Lasha v. Olin Corp., 625 So.2d 1002 (La.1993), wherein the court held that a jury charge requiring "reasonable medical certainty" was impermissible. In the instant case, the difference in meaning to a jury between "reasonable probable consequence" and "reasonable medical possibility" is minimal or nonexistent. It is unnecessary for us to define the difference between the two terms because the instructions fairly and reasonably point out the issue and provide a reasonably correct principle of law for the jury to apply in deciding the causation of injury issue. The instructions as a whole are not so inadequate as to constitute an error of law. West v. U.S.F. & G., 405 So.2d 877 (La.App. 3d Cir.1981). For the foregoing reasons, we find that the trial court was correct in refusing to give the plaintiff's requested charge.

Denial of Plaintiff's Motion in Limine
By this assignment of error, plaintiff complains that the trial court should have granted his Motion in Limine to exclude any testimony concerning his blood alcohol level following the April 1989 accident. According to plaintiff, this testimony is unduly prejudicial and should have been excluded under the provisions of La. C.E. art. 403, i.e., that the probative value of the evidence is outweighed by its prejudicial nature.[3] The trial court denied plaintiff's motion, reasoning that plaintiff's testimony that he had consumed only "two beers" did not comport with his subsequent blood alcohol level of .169 and that this constituted an issue of creditability and/or impeachment and that the defendant was entitled to bring to the jury's attention.
One Louisiana case has addressed this issue. In Hebert v. Angelle, 600 So.2d 832 (La.App. 3d Cir.), writ denied, 604 So.2d 997 (La.1992), a customer sued a bar owner after he was shot by another patron of the bar. The trial judge refused to admit evidence that the blood alcohol level of the shooter was .17, concluding that no proper foundation had been laid and that the prejudicial effect of the evidence outweighed its probative value. According to the court, the shooter's behavior was no different at the time of the shooting than it was at other times and thus evidence of his intoxication would have served no purpose other than to unduly prejudice the jury. Id. at 836.
In contrast, in this case, evidence of plaintiff's blood alcohol level was used only to impeach the veracity of plaintiff's obviously self-serving testimony that he had only consumed "two beers" prior to the April 1989 accident. Additionally, Dr. Chevis' testimony highlighted a number of discrepancies between plaintiff's description of the April 13th accident to Dr. Chevis immediately after the accident and to Dr. Kewalramani almost one month later, on May 10, 1989. As such, Dr. Chevis' testimony, elicited merely to attack plaintiff's credibility, was not unduly prejudicial. We concur with defendants' observation that "[n]o one should be allowed to testify untruthfully in a court of law and then secure protection from exposure by claiming that evidence disclosing his lie is more prejudicial than probative." The trial court was correct in denying plaintiff's Motion in Limine and in admitting Dr. Chevis' testimony.

Inadequacy of General Damages Award
By his final assignment of error, plaintiff complains that this court should grant an *1302 increase in the damages awarded by the jury. Relying on this court's opinion in Redondo v. Consolidated Freightways Corp., 529 So.2d 1296 (La.App. 4th Cir.), writ denied, 533 So.2d 363 (La.1988), plaintiff contends that the minimum award possible for general damages following a laminectomy is $100,000. In addition, plaintiff asserts that he should be awarded $37,164.44 in medical expenses.
In reviewing an award of damages, the applicable standard of review is abuse of discretion, but in weighing the award, the appellate court must look not to prior awards, but to the individual circumstances of the case. Talamo v. Shad, 619 So.2d 699, 705 (La.App. 4th Cir.), writ denied, 625 So.2d 175 (La.1993). An abuse of discretion occurs if the court was arbitrary or capricious in its decision. Torrance v. Caddo Parish Police Jury, 119 So.2d 617, 619 (La. App.2d Cir.1960). "Capricious" means the entry of judgment with no substantial evidence to support it or a conclusion contrary to substantiated competent evidence. Coliseum Square Assoc. v. New Orleans, 544 So.2d 351, 260 (La.1989). "Arbitrary" implies a disregard of evidence or the proper weight thereof. Id.
A complete review of the trial transcript in this matter demonstrates that the jury's award was neither clearly wrong nor manifestly erroneous. As the chart above shows, there was no significant difference in plaintiff's condition eight months prior to the accident in question and his condition four years post-accident. Although the jury found that Mr. Strawmyer was at fault in the accident, a fact that defendants never contested, it was entitled to conclude that plaintiff's 1991 discectomy and spinal fusion were not caused solely by the March 1989 accident. Rather, the jury may simply have concluded that defendants were liable for aggravation of plaintiff's pre-existing condition but that the discectomy and fusion would have been necessary given plaintiff's long-standing back problems even if the March 1989 accident had never taken place. Accordingly, an award of $10,000 in general damages is not manifestly erroneous under the individualized facts of this case.

CONCLUSION
For the foregoing reasons, we affirm the decision of the trial court in all respects. Each party shall bear their own costs.
LOBRANO, Judge, concurs in part.
The majority result is absolutely correct. However, I disagree with the conclusion that the charge given on causation was a "theoretical" error. There were in fact three accidents which could have concurred to cause plaintiff's injuries; the injury in 1985, the March 1989 accident and the April 13, 1989 accident. Thus it was entirely proper for the trial court to use the phrase "Substantial part in bringing about or actually causing the accident or the injury."
NOTES
[1] We note that the damage to plaintiff's car was $569.80, as evidenced by a repair estimate introduced by plaintiff at trial. This amount was not submitted to the defendant's insurers, nor was it an item of damages prayed for by plaintiff in his petition. Thus, it is not directly at issue in this case. Only damages for plaintiff's personal injuries are directly implicated in this appeal.
[2] As noted above, this item of damages was not prayed for in plaintiff's petition. However, during closing argument, counsel for defendants admitted that they would pay this item of damages. The jury apparently awarded this amount to plaintiff based on the repair estimate he had submitted into evidence.
[3] Plaintiff also complains that the witness who testified about these matters was not the person who drew plaintiff's blood, conducted the test, or verified the results. This is, in essence, a hearsay argument, although plaintiff did not brief the argument in any detail. As such, we consider the argument to be abandoned under Unif.R.Ct. App. 2-12.4. Moreover, even if this argument had not been abandoned, we would have rejected it. Admission of plaintiff's medical records from his April 1989 accident on which the doctor relied was proper under La.C.E. art. 803(6), and Dr. Chevis, who was accepted by the court as an expert witness, "is entitled to give his opinion regarding the contents written in the medical records he examined." Quinones v. United States Fidelity & Guar. Co., 617 So.2d 124, 127 (La.App. 5th Cir.1993).