925 So.2d 559 (2006)
Francisco E. JARAMILLO, M.D.
v.
David L. LOPEZ, Walker Imports, Inc., Mid-Continent Casualty Company and American National Property & Casualty Company.
No. 2004-CA-2042.
Court of Appeal of Louisiana, Fourth Circuit.
January 18, 2006.
*561 Julian R. Murray, Jr., Chehardy Sherman Ellis Breslin Murray & Recile, L.L.P., Metairie, LA, and Lolis E. Elie, Elie, Jones & Associates, and Romualdo Gonzalez, Braden, Gonzalez & Associates, New Orleans, LA, for Plaintiff/Appellant, Francisco E. Jaramillo, M.D.
Robert E. Kerrigan, Jr., John Jerry Glas, Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, LA, for Defendant-Appellee, The Insurance Company of the State of Pennsylvania.
Morgan J. Wells, Jr., Christopher R. Pennison, Larzelere Picou Wells Simpson Lonero, LLC, Metairie, LA, for Defendants/Appellees, Walker Imports, Inc. d/b/a Walker Acura and Oklahoma Surety Company.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
This case was brought by the plaintiff, Francisco E. Jaramillo, M.D., in connection with damages that he allegedly sustained in a motor vehicle accident. The case was tried before a jury, which found that he was not entitled to damages. Dr. Jaramillo is appealing the trial court judgment.

FACTS AND PROCEDURAL HISTORY
Dr. Jaramillo and David Lopez were involved in a motor vehicle accident. Mr. Lopez was driving his mother and daughter to a bus stop on his way to work when the accident happened. Dr. Jaramillo was attempting to make a left turn at the intersection of Bienville and North Genois Streets in New Orleans when his Ford pick-up truck was hit by the car driven by Mr. Lopez, which was owned by Mr. Lopez's employer, Walker Imports, Inc. Dr. Jaramillo, a professor of urology at LSU Medical Center, was on his way to perform a medical procedure at the Mercy Campus of Memorial Medical Center when the accident occurred. Dr. Jaramillo was attempting to get to the physicians' parking lot at the hospital when the car driven by Mr. Lopez hit his truck from the rear.
Mr. Lopez and Dr. Jaramillo exited their vehicles after the accident. Mr. Lopez apologized for hitting Dr. Jaramillo's truck, and he produced an insurance card showing that the car he was driving was insured. Mr. Lopez explained that he was driving his employer's car and that it was insured by his employer.
When Mr. Lopez exited the car he was driving, he was concerned that Dr. Jaramillo might have been injured in the accident. Mr. Lopez asked Dr. Jaramillo whether he had been injured, and he said that he was not hurt.
Mr. Lopez did not want to call the police to investigate the accident, and Dr. Jaramillo agreed not to call the police. Mr. Lopez, however, signed a statement saying that he had hit Dr. Jaramillo's truck from *562 the rear and would take responsibility for the damages resulting from the accident. Dr. Jaramillo and Mr. Lopez went to the hospital where Dr. Jaramillo had been scheduled to perform a procedure, and a copy of the insurance card produced by Mr. Lopez was made.
After the photocopy was made, Dr. Jaramillo drove Mr. Lopez to the Bohn Ford Collision Center, which was near the hospital, to get an estimate of what it would cost to repair the damages to Dr. Jaramillo's truck. Mr. Lopez observed Dr. Jaramillo rubbing his neck while they were waiting for the estimate. This concerned Mr. Lopez, and he asked Dr. Jaramillo about it. Mr. Lopez testified that Dr. Jaramillo said that his neck was hurting due to a previous injury.
After the estimate was obtained, Dr. Jaramillo drove Mr. Lopez to a bank, where Dr. Jaramillo assumed Mr. Lopez would obtain the money needed to repair the truck. Mr. Lopez, however, left the bank without the money.
After the trip to the bank, Dr. Jaramillo returned to the hospital where he performed the procedure that had been previously scheduled. After he had completed the procedure at the hospital, he went to the LSU Clinic where he began to have pain in his cervical spine[1], arms, and back. Dr. Jaramillo described the pain as "very bad pain." Dr. Jaramillo then spoke with a physician in the orthopedic department at the clinic. The physician examined Dr. Jaramillo very superficially and told him that he had a whiplash injury to his neck. Dr. Jaramillo was given some pain medication and a muscle relaxant from a supply of medicine that was kept in the orthopedic department.
A few days after the accident, Mr. Lopez called Dr. Jaramillo to discuss payment for the repairs to Dr. Jaramillo's truck. During this conversation, Dr. Jaramillo never mentioned that he had suffered any injuries from the accident.
A few months before the accident, Dr. Jaramillo had made plans to attend a uro-logical conference in Costa Rica. Two days after the accident, he flew to Costa Rica to attend the conference, but he was in so much pain that he was unable to attend any of the meetings. He tried to obtain relief from the pain by spending time in a Jacuzzi, in a swimming pool at the hotel where he was staying in Costa Rica, and in the sea, but the pain persisted.
When Dr. Jaramillo returned to New Orleans from Costa Rica, Dr. Anparo Gutierrez, a neurologist, treated him. Dr. Gutierrez ordered an MRI[2] of Dr. Jaramillo's neck, and after reviewing the MRI, she referred Dr. Jaramillo to Dr. Michael Carey, a neurosurgeon at the LSU Medical Center. After Dr. Carey examined Dr. Jaramillo, he recommended that Dr. Jaramillo have surgery.
Dr. Jaramillo testified that he was terrified at the prospect of having an operation on his neck, because if the spinal cord were injured during surgery, he could be paralyzed. Dr. Jaramillo was faced with the choice of having surgery that presented a risk of paralysis or of living with the pain. If he lived with the pain, however, there was still a risk that he might ultimately be paralyzed from pressure on his spinal cord. Dr. Jaramillo sought a second opinion before having the surgery, and Dr. Joseph M. Epps, from whom the second *563 opinion was obtained, also recommended surgery.
Approximately one month after the accident with Mr. Lopez, Dr. Jaramillo underwent surgery on his spine. Although the surgery was successful, Dr. Jaramillo was left with permanent physical disabilities, including chronic pain. Dr. Jaramillo attempted to return to the practice of urology, but he found that he could no longer perform urological surgery or teach medical residents to perform surgical procedures. He was forced to retire from the practice of urology, even though performing urological surgery and teaching surgical procedures to resident physicians were the focus of his life.
Dr. Jaramillo brought suit against (1) Mr. Lopez, (2) Mr. Lopez's employer, Walker Imports, Inc. doing business as Walker Acura, which owned the car driven by Mr. Lopez, (3) Walker Imports' insurers, Oklahoma Surety Company/Mid-Continent Casualty Insurance Company and The Insurance Company of the State of Pennsylvania, and (5) Dr. Jaramillo's uninsured motorist carrier, American National Property & Casualty Company. As defenses to Dr. Jaramillo's claim for damages, Walker Imports and its insurers raised the following arguments: (1) that they were not liable for any damages Dr. Jaramillo may have suffered, because Mr. Lopez did not have permission to use the car involved in the accident; (2) that Mr. Lopez was not acting in the course and scope of his employment when the accident happened; and (3) that Walker Imports was not negligent in entrusting the use of the car to Mr. Lopez. Additionally, Mr. Lopez, his employer, and their insurers argued that Dr. Jaramillo was negligent in moving his truck halfway into the right-hand lane when he attempted to turn left, thus causing the accident.
The case was tried before a jury, which found that Mr. Lopez was at fault in causing the accident. They did not award damages to Dr. Jaramillo, however, because they found that Dr. Jaramillo's problems with his cervical spine and his disability were not the result of injuries suffered in the accident. Although the jury found that Dr. Jaramillo's disability was not caused by the accident, the jurors failed to answer the jury interrogatory on the issue of whether any of the defendants were responsible for the property damage to Dr. Jaramillo's truck.
Dr. Jaramillo filed a motion for a judgment notwithstanding the verdict or, alternatively, for a new trial. The motion was denied except with respect to the issue of the amount of property damage sustained by Dr. Jaramillo's truck. That issue was resolved by the parties, however, and is not before this Court.

DISCUSSION
Dr. Jaramillo has raised two assignments of error on appeal. First, he contends that the trial court judge erred by failing to instruct the jury that if they found that he was not suffering neck pain prior to the accident but neck pain appeared after the accident and continuously manifested itself, they should presume that there was a causal connection between the accident and his disabling condition. Second, Dr. Jaramillo claims that because the jury found that Mr. Lopez was negligent in causing the accident, the jury erred in failing to find that the negligence caused his disability.

Jury Instruction
In Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615 (La.2/20/95), 650 So.2d 757, 759, the Louisiana Supreme Court set forth the burden of proof that must be met by a plaintiff in a personal injury case. The Supreme Court stated:

*564 In a personal injury suit, plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. Plaintiff must prove causation by a preponderance of the evidence. The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident.
Id. (citations omitted).
The plaintiff may be assisted in meeting the burden of proof required to establish that an injury was caused by an accident by a legal presumption that was articulated in Housley v. Cerise, 579 So.2d 973 (La.1991). The Louisiana Supreme Court, quoting from an earlier case, Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977), stated:
[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
579 So.2d at 980. The legal presumption discussed in the Housley case is known as the Housley presumption.
The Housley presumption is a rebuttable presumption, however. Even if the presumption exists, a defendant may defeat it by showing that an alleged injury could have been caused by some other particular incident rather than by the accident that the plaintiff claims was the cause of the injury. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757, 761.
In Juneau v. Strawmyer, 94-0903, 94-2615 (La.App. 4 Cir. 12/15/94), 647 So.2d 1294, this Court stated that for a plaintiff to benefit from the Housley presumption of causation, three things must be established by a preponderance of the evidence. First, the plaintiff must prove that he was in good health prior to the accident allegedly causing the plaintiff's injury. Second, the plaintiff must show that subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested themselves after the accident. Third, the plaintiff must demonstrate through medical evidence, circumstantial evidence, or common knowledge that there was a reasonable possibility of causation between the accident and the alleged injury. 647 So.2d at 1299.
In the instant case, Dr. Jaramillo testified that a little more than two years prior to the accident, he had problems with his neck. He stated that "I had pain in my back, my neck ... and the pain was radiating down to these three fingers ... the burning sensation in the fingers, and I had some paresthesia [an abnormal sensation of the skin, such as numbness, tingling, pricking or burning, that has no objective cause] in the area of the left shoulder." Although the pain ultimately resolved itself, according to Dr. Jaramillo's testimony, the pain recurred about seven months later. Then there was a time period of at least a year prior to the accident when Dr. Jaramillo was pain free. After the accident, however, the pain recurred.
Dr. Jaramillo argues that the pain he had prior to the accident was a result of radiculopathy[3] but that the pain that occurred *565 after the accident was a result of myelopathy[4]. Dr. Jaramillo testified that he had been diagnosed with radiculopathy prior to the accident with Mr. Lopez but that he was diagnosed with myelopathy only after the accident. Nevertheless, when Dr. Jaramillo was asked at trial whether he would agree with a report by Dr. Albert Alexander, a neuroradiologist, that he had a disk herniation at the C3-4 level of his spine[5] with associated spondylosis[6] based on an MRI taken prior to the accident, Dr. Jaramillo stated that he agreed with the report. Dr. Jaramillo also agreed that the herniated disk was "contacting the spinal cord and causing a flattening of the spinal cord." Additionally, Dr. Jaramillo affirmed that an MRI taken over two years prior to the accident with Mr. Lopez "showed the same thing" that the MRI taken after the accident showed. Dr. Jaramillo further affirmed that Dr. Alexander's report indicated that he had two problems with his spine prior to the accident. There was radiculopathy at the C6-7 level, and, additionally, the cervical disks at the C3-4 and the C4-5 levels were touching the spinal cord and, according to Dr. Alexander's report, causing a flattening of the spinal cord.
Dr. Louis Espinoza, a rheumatologist, affirmed in his testimony at trial that Dr. Jaramillo had "degenerative joint disease" that predated the accident with Mr. Lopez. He also affirmed that an MRI of Dr. Jaramillo's cervical spine that was taken over two years prior to the accident showed "severe osteoarthritic changes in his neck" as well as "C3-4 level disk herniation, narrowing the spinal cord and spinal cord contact." Additionally, he agreed that "[a]t the C-45 [sic] level there was disk protrusion and also narrowing of the neuroforaminal canal [an opening in the spine] and suspected nerve route [sic] contact."
When Dr. Alexander testified, he said that he thought that the disk at the C3-4 level in Dr. Jaramillo's spine was "pressing on the spinal cord" more than two years prior to the accident. He also affirmed that there was a protrusion or herniation of the disk at the C3-4 level that was "pressing on the spinal cord itself and causing it to flatten somewhat." Further, Dr. Alexander testified that an MRI of Dr. Jaramillo's cervical spine that was done more than two years prior to the accident and an MRI that was done on his cervical spine shortly after the accident were essentially the same.
In declining to give the jury instructions that Dr. Jaramillo requested pursuant to the Housley presumption, the trial court judge stated as follows:
[I]t is the Court's position that the Howsley [sic] presumption is not meant to be directed towards a pre-existing condition, especially one as long standing as the one that Dr. Jaramillo had had, and had the type of medical treatment that he had over the years. The Court is of the opinion that it is meant *566 to deal with cases where there is no evidence of any prior problems relative to an injury and there subsequently is an accident and there are questions about whether there is causation, then I think the Howsley [sic] presumption comes into play.
We agree with the trial court judge's decision that the Housley presumption is inapplicable in the instant case. See, e.g., Juneau v. Strawmyer, 94-0903 (La.App. 4 Cir. 12/15/94), 647 So.2d 1294, where this Court found that the trial court did not err in refusing to give the requested jury charge on the Housley presumption where the plaintiff did not succeed in proving that he was in good health prior to his accident. In the instant case, Dr. Jaramillo failed to prove that he was in good health prior to his accident. Therefore, we find no merit in Dr. Jaramillo's first assignment of error.

Jury's Failure to Find that The Accident Caused Dr. Jaramillo's Injuries
In his second assignment of error, Dr. Jaramillo contends that because the jury found that Mr. Lopez was negligent in causing the accident, the jury erred in not finding that the accident was the cause of Dr. Jaramillo's disability. The finding reached by the jury on this issue is a finding of fact. The standard of review for a factual finding by a jury is articulated in Rosell v. ESCO, 549 So.2d 840 (La.1989). In that case the Louisiana Supreme Court stated that it is well settled that an appellate court may set aside a factual finding of a trial court or a jury only where the finding was based on a "manifest error" or was "clearly wrong." Id. at 844. Further, where there is a conflict in the testimony, a trial court's or a jury's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal, even though the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court or the jury. Id. Finally, where there are two permissible views of the evidence, the trial court's or the jury's choice between them cannot be manifestly erroneous or clearly wrong. Id. See also Harvey v. Cole, XXXX-XXXX (La.App. 4 Cir. 1/23/02), 808 So.2d 771.
In the instant case, Dr. Jaramillo argues that although he had radiculopathy prior to the accident with Mr. Lopez, he did not have myelopathy. He contends that the myelopathy was caused by the accident and that, therefore, his inability to practice urology was caused by the accident. Dr. Gutierrez, the neurologist who treated Dr. Jaramillo, described the distinction between radiculopathy and myelopathy. She said that when a disk in the spine moves, it can move posteriorly, laterally, or in both directions. When a disk moves in a lateral direction, a nerve root in the spine may be compressed. That condition is called radiculopathy. When a disk moves in a posterior direction, it may impinge upon the spinal cord itself. When a physician believes that the spinal cord is being compressed, the physician makes the clinical diagnosis of myelopathy, which is a more serious diagnosis than that of radiculopathy.
Dr. Gutierrez further explained that with radiculopathy only one nerve root is impinged and there is an area of weakness or pain, whereas with myelopathy there can be loss of control of the arms and legs and certain bodily functions as well as possible paralysis. Dr. Gutierrez testified that it was more likely than not that the accident with Mr. Lopez was the cause of Dr. Jaramillo's myelopathy, which resulted in his disability.
Nevertheless, there was testimony from which the jury could have concluded that the accident did not cause Dr. Jaramillo's myelopathy. Dr. Jaramillo's girlfriend, who *567 accompanied him to the medical conference in Costa Rica two days after the accident, testified that the turbulence on the plane was "rough." Even Dr. Gutierrez agreed that a turbulent flight could be a triggering event for the worsening of Dr. Jaramillo's spinal problems. Additionally, there was evidence presented at trial to support a finding that the accident with Mr. Lopez did not involve such force that it would have affected the condition of Dr. Jaramillo's spine. Mr. Lopez testified that the impact in the accident was so slight that he could not believe that he had been in an accident. Dr. Jaramillo also admitted at trial that he did not even know that his truck had been hit, and he further testified that he did not feel any pain at all from the impact. Thus, we find that the jury could have reasonably concluded either that the event that caused Dr. Jaramillo's myelopathy was the turbulent flight to Costa Rica or that the accident with Mr. Lopez was not the cause.
There is also sufficient evidence in the record to support a conclusion by the jury that Dr. Jaramillo had myelopathy prior to the accident and that, therefore, the cause of his disability did not result from the accident. As discussed in connection with Dr. Jaramillo's assignment of error regarding the Housley presumption, Dr. Jaramillo clearly had problems with his spine prior to the accident. There was conflicting evidence presented concerning whether Dr. Jaramillo's spinal impairment rose to the level of myelopathy prior to the accident. Clearly, Dr. Gutierrez opined that the myelopathy was more probably than not caused by the accident with Mr. Lopez. The testimony of other physicians, such as Dr. Alexander, could, however, be reasonably construed to support a finding that the myelopathy that resulted in Dr. Jaramillo's disability was present prior to the accident.
Where, as in the instant case, there are two permissible views of the evidence, the trial court's or jury's choice between them cannot be manifestly erroneous or clearly wrong and should not be disturbed on appeal. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The jury made a determination that one view of the evidence was more credible than the other, and we are not permitted to disturb reasonable evaluations of credibility and reasonable inferences of fact on appeal. Id. Therefore, we must uphold the jury's finding of fact in this case.

CONCLUSION
We find Dr. Jaramillo's assignments of error on appeal to be without merit. The trial court judgment is affirmed.
AFFIRMED.
NOTES
[1] The cervical spine is that part of the spine that is located in the neck.
[2] MRI is an acronym for magnetic resonance imaging, which is a procedure in which a magnet linked to a computer is used to create detailed images of areas inside the body.
[3] Radiculopathy is the irritation of a nerve root at any level of the spine, and it can be caused by such things as a protrusion of a disk, arthritis of the spine, or compression from a tumor. Radiculopathy can cause pain or neurological deficits.
[4] Myelopathy is a disturbance of the spinal cord that results in loss of sensation and mobility.
[5] The spine is divided into levels that refer to the location of the spinal cord and of the vertebrae, which are the bones in the spine. The spine in the neck includes the first seven vertebrae in the spine and consists of seven levels that are numbered C1 through C7.
[6] Spondylosis refers to the degenerative changes that occur in the spine, including degeneration of the joints, intervertebral disks, ligaments, and connective tissue of the cervical vertebrae.